UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 08-23367-CIV-GOLD/McALILEY

JOSE A HERNANDEZ,

    Appellant,

v.

JORGE A. PULIDO,

    Appellee.

_____/

## ORDER AFFIRMING IN PART AND REVERSING IN PART ORDER OF UNITED STATES BANKRUPTCY COURT; CLOSING CASE

THIS CAUSE comes before the Court on the appeal of the Order Granting Defendant's Motion to Dismiss Adversary Complaint with Prejudice entered on July 15, 2008 in the underlying adversary proceeding before the United States Bankruptcy Court (Case No. 08-01145). Upon careful review and consideration of the record on appeal and the briefs filed by the parties, oral argument previously set for this appeal would not aid my disposition of this matter and is no longer necessary. For the following reasons, the Bankruptcy Court Order is affirmed in part and reversed in part.

**I.    Background**

Appellant Jose A. Hernandez commenced the underlying adversary proceeding on February 19, 2008 against Appellee Jorge A. Pulido, which was dismissed on April 1, 2008, and Hernandez thereafter filed his First Amended Complaint, the subject of the Order on appeal. The Amended Complaint challenged the dischargeability under 11 U.S.C. § 523(a)(2), (4) and (6) of a debt he is owed by Pulido, who along with his wife filed a joint Chapter 7 petition. Appellant alleges that Pulido was the owner of a medical clinic called

1

Healthy Bones Medical Services, Corp. ("Healthy Bones"), which was formed by Pulido's partner Yocis Nunez on or about January 5, 2005. Compl. ¶ 6.[1] The formation and operation of Healthy Bones was illegal because Pulido was a convicted felon, and under Florida law was prohibited from owning any medical facility in Florida. Compl. ¶ 7. In order to obtain initial certification from the Florida to operate the clinic, Healthy Bones, through Nunez and Pulido, entered into a contract with Hernandez, a licensed physician, to become the medical director of the clinic. Compl. ¶ 8. Pulido and Nunez intentionally concealed their fraudulent partnership from Hernandez in causing Hernandez to enter into a contract with Healthy Bones. Compl. ¶¶ 10, 11. On March 16, 2006, Healthy Bones was dissolved, and Nunez and Pulido incorporated another medical clinic called Unlimited Medical Center, Inc. ("Unlimited"). Compl. ¶¶ 14, 15.

Hernandez alleges that on May 1, 2006, he secured an Amended Default Final Judgment ("First Judgment") against Nunez and Healthy Bones in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. Compl. ¶ 16. On July 17, 2006, when Hernandez attempted to execute the judgment against Nunez and Healthy Bones, Pulido produced an affidavit to the sheriff to stop the execution. Compl. ¶ 17. In the affidavit, Pulido attested that the assets being seized were owned by him and not by Healthy Bones or Nunez. By creating an issue of ownership, Pulido succeeded in thwarting the execution of the default judgment. Compl. ¶ 18. Subsequently, the Florida state court found that Pulido and Unlimited should be made subject to the default judgment, and a Second Amended Default Final Judgment ("Second Default Judgment")

---

[1] The First Amended Complaint is found at docket entry 23 of the adversary proceeding.

2

was entered on March 20, 2007. Compl. ¶¶ 21, 22. Hernandez challenges the dismissal with prejudice of his Complaint that the Second Default Judgment is nondischargeable because this debt meets the exceptions to discharge set forth in 11 U.S.C. § 5239(a)(2), (4) and (6).

## II.     Jurisdiction

Appellate jurisdiction is conferred on this Court by 11 U.S.C. § 158(a)(1) which states, "[t]he district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees; ... of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges....An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving." Generally, a final order or decision is "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L. Ed. 911 (1945); *Jove Eng'g v. IRS*, 92 F.3d 1539, 1547 (11th Cir. 1996). In the bankruptcy arena, the Eleventh Circuit has found that "it is generally the particular adversary proceeding or controversy that must have been finally resolved rather than the entire bankruptcy litigation." *Commodore Holdings, Inc. v. Exxon Mobile Corp.*, 331 F.3d 1257, 1259 (11th Cir. 2003). Here, the Order constitutes a final order because it dismissed the Appellant's claims with prejudice, which terminated the Appellant's adversary proceeding. *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1338 (11th Cir. 2007) (stating that an order is final and appealable when it "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment"). Accordingly, I have appellate jurisdiction.

## III.    Standard of Review

3

District courts sit as appellate courts over bankruptcy decisions. *Miner v. Bay Bank & Trust Co. (In re Miner)*, 185 B.R. 362, 365 (N.D. Fla. 1995), aff'd, 83 F.3d 436 (11th Cir. 1996). The Bankruptcy Court's findings of facts should not be set aside unless they are clearly erroneous. *Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.)*, 904 F.2d 588, 593 (11th Cir. 1990). The burden to show that such factual findings are clearly erroneous lies with the appellant. *Acquisition Corp. of Am. v. Fed. Sav. & Loan Ins. Corp.*, 96 B.R. 380, 382 (S.D. Fla. 1988). A finding of fact is not clearly erroneous unless "this court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been committed." *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Serv., Inc.)*, 408 F.3d 689, 698 (11th Cir. 2005) (internal citations omitted). Conclusions of law, on the other hand, are reviewed on a *de novo* basis. *In re Englander*, 95 F.3d 1028, 1030 (11th Cir. 1996); *Olympia & York Fla. Equity Corp. v. Bank of N.Y. (In re Holywell Corp.)*, 913 F.2d 873, 879 (11th Cir. 1990). Further, mixed issues of law and fact, and "ultimate facts" are all subject to *de novo* review. *In re Chase & Sanborn Corp.*, 904 F.2d at 593; *In re Sublett*, 895 F.2d 1381, 1383 (11th Cir. 1990).

On review of an order granting a motion to dismiss, I note that the court must accept all the factual allegations in the complaint as true and evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *Hoffend v. Villa*, 261 F.3d 1148, 1150 (11th Cir. 2001). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1959, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). However, while a

plaintiff need not state in detail the facts upon which he bases his claim, Fed. R. Civ. P. 8(a)(2) "still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 n.3 (2007). In other words, a plaintiff's pleading obligation requires "more than labels and conclusions." *Id.* at 1964-65. The previous standard that there be "no set of facts" before a motion to dismiss is granted has thus been abrogated in favor of the requirement that a pleading must be "plausible on its face." *Bell Atl.*, 127 S. Ct. at 1968, 1974 (in order to survive a motion to dismiss, the Plaintiff must have "nudged [its] claims across the line from conceivable to plausible.").

## IV.   Discussion

Appellant challenges the dischargeability of the Second Default Judgment under 11 U.S.C. § 523(a)(2), (4) and (6). As a threshold matter, as Appellant does not raise any argument on appeal concerning the dismissal of his claim of nondischargeability under 11 U.S.C. § 523(a)(4), I do not reach the question of whether dismissal on that basis was correct, and examine only whether he has stated a claim under § 523(a)(2) and (6).

### A.   11 U.S.C. § 523(a)(2)

Appellant maintains that the debts arising from the Second Default Judgment should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A), which provides that "[a] discharge [in bankruptcy] does not discharge an individual debtor from any debt...for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by...false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]"  11 U.S.C. § 523(a)(2)(A).

As stated by the Eleventh Circuit, the elements required to prove an exemption

5

under this section are: "the debtor made a false statement with the purpose and intention of deceiving the creditor; the creditor relied on such false statement; the creditor's reliance on the false statement was justifiably founded; and the creditor sustained damage as a result of the false statement." *Fuller v. Johannessen (In re Johannessen)*, 76 F.3d 347, 350 (11th Cir. 1996); *City Bank & Trust Co. v. Vann* (In re Vann), 67 F.3d 277 (11th Cir. 1995); *In re St. Laurent*, 991 F.2d 672, 676 (11th Cir. 1993).

Appellant has adequately alleged the first three elements. With respect to false pretenses and false representations, the Complaint alleges that Appellee intentionally concealed from Appellant his fraudulent partnership with Nunez and his fraudulent intent to illegally operate Healthy Bones with the unwitting assistance of Appellant.[2] Compl. ¶¶ 10, 12. *In re Gilmore*, 221 B.R. 864, 872 (Bankr. N.D. Ala. 1998) (false representations are "express misrepresentations," while the term "false pretenses" is broader and encompasses "implied misrepresentations or any conduct intended to create and foster a false impression.") (internal quotations omitted). Further, Appellant has alleged that he relied on the false pretenses when he entered into a contract with Healthy Bones and that, although not explicitly stated, it can reasonably be inferred from the Complaint that his reliance was justifiable.[3] Compl. ¶ 12.

---

[2] The parties engage in a discussion about whether the "actual fraud" has been established by virtue of collateral estoppel in the proceedings that led to the Second Default Judgment. Because Bankruptcy Court held that Appellant has alleged that Appellee engaged in a fraudulent scheme, a finding with which I agree, whether Appellant is entitled to collateral estoppel on the question of fraud is premature and unnecessary for the Bankruptcy Court to resolve Appellee's Motion to Dismiss.

[3] The Bankruptcy Court took judicial notice of the fact that Appellant had previously testified that he did in fact execute on the assets of Healthy Bones. Appellant argues first that the Bankruptcy Court erred in looking outside the four corners of the Complaint, and

However, the last element as to damages Appellant sustained as a result of Appellee's fraudulent conduct is not satisfied. The Bankruptcy Court concludes that Appellant "failed to adequately allege that any money, property, services or benefit was obtained by Appellee" and has therefore not been damaged by Appellee's fraudulent conduct.[4] [Order, ¶ 2]. Appellant argues that the Bankruptcy Court construed § 523(a)(2)(A) too narrowly and that he has alleged the requisite connection between Appellee's fraudulent conduct and the debt he is owed. In Cohen v. de la Cruz, 523 U.S. 213, 118 S. Ct. 1212, 140 L. Ed. 2d 341 (1998), the Supreme Court made clear that § 523(a)(2)(A) should be read broadly to prevent the discharge of all liability arising from fraud. Id. at 215 (holding that an award of treble damages for fraud fell within the parameters of § 523(a)(2)(A) because those damages were traceable to the debtor's fraud). Under Cohen, a judgment against a debtor that arises from a fraudulent act committed by the debtor constitutes "debt" under section 523. Id. at 218-19; see Muegler v. Bening, 314, F.3d 980, 984 (in light of Cohen, only the fact of an adverse fraud

---

second that the full record indicates that the seizure of those assets produced insufficient proceeds to satisfy the judgment, and that his *subsequent* attempt to execute his judgment was thwarted by the presentation of Appellee's allegedly false affidavit to the sheriff, as set forth in the Complaint. Without reaching the question of whether the Bankruptcy Court appropriately took judicial notice under these circumstances, the fact remains that Appellant has alleged that he has not satisfied his judgment and that Appellee continues to be indebted to him. Compl. ¶ 18. Indeed, if the judgment has been satisfied, this appeal would be moot.

[4] In particular, Appellee points out that at the hearing on Appellee's Motion to Dismiss before the Bankruptcy Court, counsel for Appellant conceded that nowhere in the Complaint is there an allegation that Appellant is owed money because he provided any "services" to Appellee. This reasoning, however, is incomplete, because it does not conclusively establish that debt at issue is not the result of Appellee's fraudulent conduct.

judgment, and nothing more, is required for a debt to be nondischargeable); *In re M.M. Winkler & Assocs.*, 239 F.3d 746, 749 (5th Cir. 2001) ("*Cohen* indicates that whether the debt arises from fraud is the only consideration material to nondischargeability); *In re Pleasants*, 219 F.3d 372, 375 (4th Cir. 2000) (stating that the language of Cohen is "broad enough to encompass a situation in which no portion of a creditor's claims was literally transferred to the fraudulent debtor").[5]  The crucial issue in the instant case, then, is whether the default judgment "arises from" or is "traceable to" or is "a result of" a fraudulent act committed by Appellee.

Although Appellant is correct that § 523(a)(2) should be read more expansively than as applied by the Bankruptcy Court, his bare allegation that the Second Default Judgment arose from the fraudulent conduct of Appellee does not suffice to withstand a motion to dismiss. A review of the Complaint and exhibits shows that Appellant alleges only that the First Default Judgment was entered against Healthy Bones and Nunez on May 1, 2006, and because Appellant's attempt to execute that judgment was thwarted by Appellee's allegedly false affidavit, the Second Default Judgment was entered on March 20, 2007 to hold Appellee liable as well. In doing so, the state court found that Appellee "placed himself into the shoes of Defendants by admission in affidavit form and establishing a health care clinic corporation *under fraud*." Compl. ¶ 21 (emphasis in original). Appellant

---

[5] The Eleventh Circuit Court of Appeals has not interpreted *Cohen* for the proposition that the debt need only result or arise from debtor's fraudulent acts in order to be excepted from discharge. Cases in this Circuit pre-dating *Cohen* indicate that this Circuit would agree with such a reading of *Cohen*. *See In re Johanssessen*, 76 F.3d at 350 (Bankruptcy Court should "determine whether or not the debt incurred stemmed from the alleged fraudulent conduct...[i]f the court finds that the conduct was indeed fraudulent and *resulted in* the debt at issue, the debt should be excepted from discharge") (citing *Greenberg v. Schools*, 711 F.2d 152 (11th Cir.1983) (emphasis added)).

has not adequately demonstrated that the debt at issue, initially incurred as a judgment only against Nunez and Healthy Bones, was the result of Appellee's fraudulent conduct. The case of *In re Donald Hanft, M.D., P.A.*, 315 B.R. 617 (S.D. Fla. 2002) is particularly instructive. In that case, a causal connection between the patient's malpractice judgment, which was subject to potential discharge, and her doctor's misrepresentation about his medical training and licensing was established where the misrepresentation was essential to transaction that led to the judgment debt owed to the patient. *Id.* at 622. By contrast, here, there are simply inadequate allegations about the nature of the default judgment for me to reasonably infer a causal connection to Appellee's fraudulent conduct.[6] Accordingly, the Bankruptcy Court did not err in dismissing Appellant's claim under § 523(a)(2).

B.     11 U.S.C. § 523(a)(6)

Appellant takes issue with the Bankruptcy Order's conclusion that he has failed to state a claim under this section because he has not alleged that Appellee intended to cause injury to Appellant. Appellant does not contest the fact that he has failed to make such an allegation, only that such an allegation is unnecessary. Because I agree with Appellant, the dismissal of this claim by the Bankruptcy Court was in error.

Section 523(a)(6) of the Bankruptcy Code excepts from discharge in bankruptcy "any debt ... for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). As held by the Supreme Court, the word "willful" modifies the word "injury," indicating that nondischargeability takes a deliberate or

---

[6] Indeed, Appellee represents in his Answer brief that the default judgment was based on Appellant's claim for breach of contract, and Appellant has not contested this representation.

intentional injury, not merely a deliberate or intentional act that leads to injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974, 977, 140 L. Ed. 2d 90 (1998). The Eleventh Circuit has concluded, based on the statutory text and after consideration of the interpretation rendered by other circuits, that "a debtor is responsible for a willful injury when he or she commits an intentional act the purpose of which is to cause injury *or which is substantially certain to cause injury.*" *In re Walker*, 48 F.3d 1161, 1165 (11th Cir. 1995) (internal quotations omitted) (emphasis added); *see also In re Ikner*, 883 F.2d 986, 991 (11th Cir.1989) (interpreting "willful" to require "a showing of an intentional or deliberate act, which is not done merely in reckless disregard of the rights of another"). Further, "malicious" means " 'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.'" *In re Ikner*, 883 F.2d at 991 (quoting *In re Latch*, 820 F.2d 1163, 1166 n.4 (11th Cir. 1987)). Constructive or implied malice can be found if the nature of the act itself implies a sufficient degree of malice, and "a showing of specific intent to harm another is not necessary." *Id.*

Under this standard, Appellant has sufficiently alleged that Appellee filed a false affidavit in order to prevent the execution of the default judgment in Appellant's favor. Compl. ¶¶ 17, 18. It can reasonably be inferred from the Complaint that Appellee filed a false affidavit with the substantial certainty that it would thwart the execution of Appellant's default judgment. Appellee argues that *Geiger* stands for the proposition that only acts done with the actual intent to cause injury can be excepted from discharge under § 523(a)(6). This interpretation is overly limiting, as *Geiger* contemplated that actions that should be excepted from discharge include injuries "neither desired *nor in fact anticipated by the debtor.*" *Geiger*, 523 U.S. 62 (emphasis added). Moreover, to read *Geiger* as

Appellee suggests would be inconsistent with the interpretation of "malice," which similarly does not require a showing of specific intent to harm. Therefore, the Bankruptcy Court erred in concluding a claim under § 523(a)(6) required an allegation that Appellee had the intent to injure Appellant. Accordingly, it is hereby

ORDERED and ADJUDGED that:

1. The dismissal of Appellant's claim of nondischargeability under 11 U.S.C. § 523(a)(2) and (4) is AFFIRMED.

2. The dismissal of Appellant's claim of nondischargeability under 11 U.S.C. § 523(a)(6) is REVERSED.

3. In light of the reasoning for dismissal of Appellant's claim of nondischargeability under 11 U.S.C. § 523(a)(2), the Bankruptcy Court is instructed to reconsider whether dismissal should be with prejudice.

4. Oral argument scheduled for Friday, May 22, 2009 is CANCELED.

5. This case is CLOSED.

DONE and ORDERED in Chambers in Miami, Florida, this 21 day of May, 2009.

THE HONORABLE ALAN S. GOLD
UNITED STATES DISTRICT JUDGE

cc:
All counsel of record